UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| UNITED STATES OF AMERICA | |
| v. | CRIMINAL NO. 23-cr-177-ABJ |
| SHANE BRIAN LAMOND, | |
| Defendant. | |

**GOVERNMENT'S REPLY TO DEFENDANT'S OPPOSITION TO UNITED STATES' MOTION TO ADMIT CERTAIN EVIDENCE PURSUANT TO FEDERAL RULES OF EVIDENCE 807 AND 801(d)(2)(E)**

The United States of America respectfully submits the following reply in support of its Motion *in Limine* to Admit Certain Evidence Pursuant to Federal Rules of Evidence 807 and 801(d)(2)(E). As set forth below, the arguments in the Defendant's opposition to the Government's motion *in limine* are meritless and should be rejected.

**I.   TARRIO'S PROFFERED STATEMENTS SHOULD BE ADMITTED PURSUANT TO RULE 807 AS THEY ARE VERY RELIABLE AND VERY IMPORTANT**

The government and the Defendant agree, "Rule 807 is an 'extremely narrow' exception that allows for admission of 'very important and very reliable' out-of-court statements[.]" ECF No. 33 at 3. However, despite the Defendant's assertion, there is no requirement of "extreme circumstances" to admit evidence pursuant to Rule 807. Rule 807 only requires this Court to consider whether the statements are "'supported by sufficient guarantees of trustworthiness' and are 'more probative on the point for which [they are] offered than any other evidence that the' government can reasonably obtain." *United States v. Smith*, No. CR 19-324 (BAH), 2020 WL 5995100, at *7 (D.D.C. Oct. 9, 2020); *see also United States v. Slatten*, 865 F.3d 767, 807 (D.C. Cir. 2017) (*per curiam*). Indeed, as discussed in more detail below, even the cases relied upon by the Defendant do not support his assertion that admission of evidence under Rule 807 requires

1

"extreme circumstances." For the reasons previously briefed, *see generally* ECF No. 29, and the reasons discussed below, Tarrio's statements on the video clip and Tarrio's statements to Jeremy Bertino ("Bertino") should be admitted pursuant to Rule 807.

    **A.    TARRIO'S PROFFERED STATEMENTS ON THE VIDEO CLIP SHOULD BE ADMITTED PURSUANT TO RULE 807**

In opposing the government's motion to admit a film clip through documentary filmmaker and government witness Nicholas Quested ("Quested"), the Defendant argues that Rule 807 does not apply because the video clip is unreliable and more probative evidence exists. *See generally* ECF No. 33 at 6-11. The Defendant's arguments lack merit and Tarrio's statements on the video clip should be admitted pursuant to Rule 807.

    **1.    The Defendant's Arguments Against Reliability of the Video Clips Are Unavailing.**

With respect to the reliability prong of the Rule 807 test, the Defendant makes two unavailing arguments: 1) Tarrio was likely to lie; and 2) there is no corroborating evidence to support the veracity of the proffered statements. *Id.* at 6-10. The government addresses each in turn.

*First*, Tarrio was not lying in the video clip. Out of the many things that Tarrio could have lied about in a documentary to "bolster his position" and "to look good on camera," *id.* at 7, the idea that he would lie that he learned of the arrest warrant in the air simply makes no sense. Indeed, the fact that Tarrio learned of the arrest warrant in the air, landed in Virginia, and drove into the District, which he knew would result in his arrest, makes him look ineffective and foolish. It does not make him "look good," as the Defendant proffers. Tarrio's actions are inconsistent with the Defendant's assertion that Tarrio was using the documentary to promote his image as the leader of The Proud Boys. Tarrio's reputation could have been bolstered in other, certainly more helpful,

2

ways. For example, he could have allowed Quested to film his meeting at the White House, but despite Quested's pleas to do so, Tarrio refused. *See* ECF No. 29 at Ex. G, pg. 4491-92.

Moreover, Tarrio had no motive or incentive to lie about when he learned of the search warrant for his arrest, especially considering that his statements implicate him in a crime. Indeed, the fact that Tarrio, in the video, is silent about the details only emphasizes this fact. In the video, Tarrio is seen answering his associates' questions matter-of-factly, without any hyperbole or unnecessary description—as the Defendant recognizes, *see* ECF No. 33 at 9 ("[Tarrio] doesn't say where he got the information on the warrant, other than from unidentified male[.]"). The lack of detail is further evidence of the veracity of his statements. Tarrio recognized the nonpublic sensitive law enforcement information he received left him vulnerable to criminal liability, and so chose his words accordingly.

The Defendant argues that Tarrio admitting he knew about the warrant for his arrest in advance does not link him to a crime and his statements are not, therefore, more reliable as statements against penal interest. *See* ECF No. 33 at 8-9. Not so. Tarrio was in possession of confidential sensitive law enforcement that he knew he should not have had. Tarrio did not simply state the fact that there was a warrant for his arrest, as the Defendant suggests, *see id.* at 9, but says he learned about the arrest warrant in advance, while in the air, *see* ECF No. 29 at Ex. H. This case is not a murder case. There is no gun. But just as a murder weapon is evidence of a murder, knowledge one is not supposed to have—like the existence of an arrest warrant that has not been executed—is evidence of obstruction and conspiracy. Tarrio's statements are thus even more reliable as statements against penal interest. *See* Fed. R. Evid. 804, Advisory Comm. Notes (People "do not make statements which are damaging to themselves unless satisfied for good reason that they are true").

*Second*, Tarrio's statements are corroborated by other evidence. The proffered statements indicate that Tarrio learned of the warrant for his arrest while flying to the greater Washington, D.C. area. The government has "independent evidence corroborating the statement." Fed. R. Evid. 807, Advisory Comm. Note on 2019 2019 Amendments; *see also United States v. Slatten*, 865 F.3d 767, 807 (D.C. 2017) (directing courts to "look to the 'totality of circumstances ... that surround the making of the statement and that render the declarant particularly worthy of belief'") (*quoting Idaho v. Wright*, 497 U.S. 805, 819 (1990)). As the government noted, Tarrio was on the plane when he messaged his associates that "[t]he warrant was just signed." *See* ECF 29 at 27-28.

The Defendant attempts to distinguish the *Smith* case by suggesting this Court must compare apples to oranges. In *Smith*, the statement that the victim made that the Defendant took nude pictures of her and made her send him nude pictures was about the <u>substance</u> of those pictures. *See United States v. Smith*, No. CR 19-324 (BAH), 2020 WL 5995100, at *11-12 (D.D.C. Oct. 9, 2020). Here, the proffered statements are, in fact, about the <u>timing</u> of when Tarrio learned of the arrest warrant. *See* ECF No. 29 at Exhibit H (Tarrio explaining "I knew <u>as soon as</u> I got to the airport," "he texted me <u>in the air</u>," and "from the air was <u>when</u> I knew they signed the warrant") (emphasis added). The <u>timing</u> of when Tarrio learned about the arrest warrant is corroborated. *See id.* at 17 (proffering evidence that at 1:31 p.m., while Tarrio was flying to Arlington, Virginia, Tarrio texted a Proud Boys messaging group called "Ministry of Self Defense" on Telegram that "[t]he warrant was <u>just</u> signed") (emphasis added). It is important to note that what the Defendant claims is necessary—for the government to have the substance of the Defendant's messages to Tarrio while Tarrio was on the plane—is impossible. The Defendant, a trained law enforcement officer, deliberately set his Telegram messages to self-destruct, rendering them unrecoverable.

## 2. The Video Statements are Reflect the Most Probative Evidence.

With respect to the probative prong of the Rule 807 test, the Defendant argues that more probative evidence is available because the government could call Tarrio or his associates to testify about what they remember. But this is plainly not true. The unedited, contemporaneous film footage capturing the statements is the best evidence, not the memories from Tarrio and his associates about what was said over three years ago.

And, once again, the Defendant is asking this Court to compare apples and oranges. Unlike the child victim in *Smith*, Tarrio has been charged with and convicted of numerous felonies, including seditious conspiracy, for his role in the January 6, 2021, attack on the U.S. Capitol. He was subsequently sentenced by the Honorable Timothy J. Kelly to 22 years in prison. Tarrio's appeal is currently pending before the District of Columbia's Circuit Court of Appeals. *See United States v. Enrique Tarrio*, No. 23-3165 (D.C.). The video evidence is also the best evidence because Tarrio's statements were made before his additional entanglement with the criminal justice system.

## B. TARRIO'S PROFFERED STATEMENTS TO BERTINO SHOULD BE ADMITTED PURSUANT TO RULE 807

In opposing the government's motion to admit statements Tarrio made to government cooperator Jeremy Bertino, the Defendant once again argues the statements are unreliable. *See* ECF No. 33 at 11-13. In making this argument, the Defendant suggests that both Bertino and Tarrio had incentives to lie. *Id.* The Defendant further argues that Tarrio's statements to Bertino are not very important or probative. *Id.* at 13. These arguments lack merit and Tarrio's statements to Bertino should be admitted pursuant to Rule 807.

*First*, Bertino's testimony is reliable. The Defendant mischaracterizes the government's argument and the nature of Bertino's cooperation agreement. The Defendant stresses that Bertino is "almost completely immunized" to somehow suggest that Bertino was "not quite" or "sort of

immunized" and therefore not required to tell the truth to law enforcement. *See* ECF No. 33 at 11. This is simply incorrect. Bertino is immunized from prosecution so long as he tells investigators the truth and is completely forthright. *See* ECF No. 29 at Ex. C. Bertino is not immunized from prosecution if he lies to investigators and fails to be completely forthright. *Id.* It is irrational to suggest that Bertino has an incentive to lie when one considers that Bertino's lies would be grounds for the government to nullify his plea agreement, charge him for his actions related to the January 6, 2021, attack on the capitol, use Bertino's own statements against him, and file additional charges against him for lying to investigators. *See id.* To abide by the terms of his plea agreement, Bertino has every incentive to the tell the truth. *See Slatten*, 865 F.3d at 808-09 (finding that a co-defendant's declarations were reliable in part because he was immunized when he made his statements and faced criminal liability under 18 U.S.C. § 1001 if he made a materially false statement).

The Defendant's reliance on *Benton* is similarly misguided. *See* ECF No. 33 at 11. The facts in *Benton* and the facts present here are wildly different. In *Benton*, the statements were made to law enforcement by a target of the investigation, after a search warrant had been executed on his premises, who was ultimately indicted as a co-defendant for his criminal conduct. *See United States v. Benton*, 656 F. Supp. 3d 1, 10 (D.D.C. 2023). Unlike the circumstances here, the *Benton* co-defendant's statements were made to law enforcement pre-indictment and without any sort of plea agreement. The co-defendant in *Benton* had every incentive to lie to cover up his own criminal conduct. In contrast, Bertino has already accepted responsibility for his criminal conduct and has a plea agreement that requires him to tell the truth.

Furthermore, in *Benton*, the government provided the court with evidence that undermined the co-defendant's statements. *Id.* Clearly, the co-defendant was lying. Here, the Defendant has

6

proffered no such evidence to undermine Bertino's credibility. In fact, Bertino's statements are corroborated by the digital and documentary evidence, *see* ECF No. 29 at 5-11, and are also consistent with what Tarrio said in the Quested documentary footage, s*ee id*. at Ex. H; *see also Slatten*, 865 F.3d at 808 ("Consistency supports the reliability of his multiple statements and, consequently, his veracity.").

Additionally, the Defendant's argument that Tarrio had an incentive to lie to Bertino similarly lacks merit. *See* ECF no. 33 at 11-12. Tarrio made these statements while the Defendant was standing right next to him. *See* ECF No. 29 at Ex. E, pg. 1. Notably, the government does not anticipate Bertino would testify that the Defendant corrected Tarrio's characterization of their relationship. The Defendant did not correct Tarrio because Tarrio was telling the truth. Even if Tarrio was "bragging" about his relationship with law enforcement, that does not render his statements inaccurate. This argument completely neglects Tarrio's consistency and the corroborating evidence on this point.

Next, in conclusory fashion, the Defendant argues that more probative evidence exists than Bertino's proffered statements. *See* ECF No. 33 at 13. The Defendant suggests that Bertino can and should testify about the statements in the instant matter. *Id*. The government agrees. The government anticipates calling Bertino in its case-in-chief to testify about the proffered statements and the interactions he witnessed between the Defendant and Tarrio. Bertino will provide a first-hand account of statements that Tarrio made directly to him and the actions that he witnessed. *See Sotloff v. Syrian Arab Republic*, 525 F. Supp. 3d 121, 131 n. 11 (D.D.C, Mar. 15, 2021) (finding hearsay statements made to witness were reliable pursuant to Rule 807 because witness directly observed actions related to hearsay statements). Glaringly, the Defendant is silent on this issue.

**II.   TARRIO IS AN UNINDICTED CO-CONSPIRATOR AND THESE STATEMENTS ARE ADMISSIBLE PURSUANT TO RULE 801(d)(2)(E).**

The Defendant also argues that Tarrio's statements are not co-conspirator statements made in furtherance of the conspiracy and Rule 801(d)(2)(E) does not apply. *See generally* ECF No. 33 at 13-19. The Defendant, in conclusory fashion, asserts that the government has failed to meet Rule 801's three-part test because 1) it has not presented evidence independent of the proffered statements to indicate a conspiracy existed, *id.* at 14-15; 2) that there is no independent evidence that the Defendant and Tarrio were involved in a conspiracy because the Defendant was interacting with Tarrio as a typical law enforcement officer, *id.* at 17; and 3) the statements were not made in furtherance of a conspiracy; *id.* at 18. Once again, the Defendant's arguments neglect and mischaracterize the government's proffered evidence and the arguments should be rejected.

As for the Defendant's argument regarding the first prong of Rule 801's three-part test, the government has, in fact, proffered evidence that there was conspiracy to obstruct the Metropolitan Police Department ("MPD") Banner Burning Investigation. This proffered evidence includes communications between the Defendant and Tarrio leading up to and including Lamond's tip to Tarrio on January 4th, 2021, which demonstrates the Defendant was providing Tarrio with confidential information about the status of the Black Lives Matter Banner Burning Investigation, including discussions about the warrant and ultimately that it was signed. *See e.g.*, ECF No. 1 at ¶¶ 29-51. The existence of the conspiracy is only further corroborated by the fact that following Tarrio's release after his initial arrest through at least mid-2021, the Defendant never revealed to MPD that he had communicated extensively with Tarrio, ECF No. 1 at ¶ 5-9, provided Tarrio confidential information about the status of the investigation, ECF No. 1 at ¶¶ 51-52, and then lied to investigators in his June 2, 2021, interview about his extensive communications with Tarrio, *id.* at ¶¶ 65-72.

The Defendant's next argument that the government cannot meet the second prong of Rule 801's three-part test because the Defendant was interacting with Tarrio as a typical law enforcement officer defies logic. *See* ECF No. 33 at 15-17. For example, the Defendant often contacted Tarrio using encrypted messaging applications. *See e.g.*, ECF No. 1 at ¶¶ 5, 10, 14, 32, 33, 37, 38, 40, 41, 48, 67. One purpose of using encrypted messaging applications is to conceal the communications from law enforcement. The government anticipates witness testimony that indicates it is improper and inconsistent with typical MPD practice to use encrypted messaging applications set to self-destruct with a source in a legitimate law enforcement capacity. Furthermore, despite numerous opportunities to inform other law enforcement officers about his relationship with Tarrio, the Defendant never did so. *Id.* at ¶¶ 51-52. In fact, as noted above, the Defendant actively lied about his relationship with Tarrio. *Id.* at ¶¶ 65-72. If the Defendant was interacting with Tarrio as a typical law enforcement officer, or was "acting with a different goal in mind," as the Defendant argues, there would be no reason to lie. *See* ECF No. 33 at 17.

With regards to the third-prong of Rule 801's three-part test, the Defendant argues that Tarrio's statements to Bertino were not made in furtherance of the conspiracy. The Defendant's argument is circuitous and simply reiterates that there was no conspiracy. *See* ECF No. 33 at 18. For the reasons described above, the evidence establishes a conspiracy between the Defendant and Tarrio to obstruct MPD's BLM Banner Burning Investigation. The Defendant's argument that there was not a conspiracy because Tarrio was arrested shortly after he received information about the existence of the arrest warrant is unpersuasive. Of course, "the commission of a substantive offense and a conspiracy to commit are separate and distinct offenses." *Pinkerton v. United States*, 328 U.S. 640, 643. The agreement is the crime. *See United States v. Treadwell*, 760 F.2d 327, 337 (D.C. 1985). While the Defendant simply repeats his assertion that there was no conspiracy to

9

argue Tarrio's statements to Bertino were not made in furtherance of a conspiracy, the government once again reiterates they were—these statements emphasize the extent to which (and the period over which) Tarrio used the value of having a co-conspirator and joint venturer in law enforcement to his advantage ("that's my fed" or "that's my guy") and how he emphasized that relationship to protect himself. *See also* ECF No. 29 at 26.

The Defendant's assertion that that the government "presents no evidence that the Defendant acted in furtherance of a conspiracy to 'advance the Proud Boys agenda in D.C.'" is belied by the record. ECF No. 33 at 18 (*quoting* ECF No. 29 at 25). The Defendant makes this argument in passing without addressing the government's arguments and the evidence previously briefed. *See* ECF No. 29 at 25. Contrary to the Defendant's assertion, there is ample evidence that the Defendant acted to help the Proud Boys as an organization. *See, e.g.*, ECF No. 1 at ¶ 14 (the Defendant giving Tarrio "a heads up" that Proud Boys activity was "Getting people spun up"); ¶ 16 (the Defendant telling Tarrio he was giving him "a heads up" and asking him to "Please keep this between you and me"); ¶ 18 (the Defendant telling Tarrio the day before a planned rally to contest the 2020 Presidential Election, "I'm staying in D.C. tonight. Let me know if you go out and I may stop by"); ¶ 20 (the Defendant warning Tarrio that police may shut down a popular Proud Boys' meeting place down); ¶ 21 (Tarrio telling the Defendant the Proud Boys' plans in advance of the December 12, 2020, rally and the Defendant responding, "Copy. Antifa should be staying up at BLM Plaza. Do you want me to let our uniformed officers know that or keep it to myself? I will be around all night in case anything kicks off").

In short, the Defendant's arguments that Tarrio's statements to Bertino and on the video clip do not meet the requirements of Rule 801(d)(2)(E) lack merit. Tarrio's proffered statements are those of a co-conspirator made in furtherance of a conspiracy and should be admitted as an

exception to the hearsay rule. *United States v. Perholtz*, 842 F.2d 343, 356 (D.C. Cir. 1988) ("[O]ut-of-court statements of one are not hearsay and are admissible against the others, if made in furtherance of the common goal.") (citation omitted).

### III. THE PROFFERED STATEMENTS ARE NOT UNFAIRLY PREJUDICAL AND SHOULD NOT BE EXCLUDED PURSUANT TO RULE 403

The Defendant next argues that if this Court finds the proffered statements are admissible, they should still be excluded pursuant to Federal Rule of Evidence 403. He argues admitting the proffered statements would "significantly prejudice" him because 1) Tarrio and the Proud Boys are "polarizing figures," and the proffered statements "would inextricably link the Defendant with an "extremist organization and its divisive ideals," and 2) could lead the jury to believe that "he and Tarrio are in a conspiracy for which they are not charged." *See* ECF No. 33 at 19. These arguments are not rooted in applicable Rule 403 case law and should be rejected.

Rule 403 precludes the admission of otherwise relevant and admissible evidence only if "its probative value is *substantially* outweighed by the danger of unfair prejudice. . ." Fed. R. Evid. 403 (emphasis added). The D.C. Circuit has explained Rule 403's prohibition of unfairly prejudicial evidence in this way:

> Rule 403 does not provide a shield for defendants who engage in outrageous acts, permitting only the crimes of Caspar Milquetoasts to be described fully to a jury. It does not generally require the government to sanitize its case, to deflate its witnesses' testimony, or to tell its story in a monotone. It does not bar powerful, or even "prejudicial" evidence. Instead, the Rule focuses on the "danger of unfair prejudice," and gives the court discretion to exclude evidence only if that danger "substantially outweigh[s]" the evidence's probative value. [citation omitted, alterations in original].

*United States v. Gartmon, 146 F.3d 1015, 1021 (D.C. Cir. 1998)* (affirming admission of evidence that the defendant, charged with fraud, had placed gun in coconspirator's vagina and threatened her); *see also United States v. Pettiford*, 517 F.3d 584, 590 (D.C. Cir. 2008) ("Rule 403 'does not bar powerful, or even "prejudicial" evidence. Instead, the Rule focuses on the "danger of unfair

11

prejudice," and gives the court discretion to exclude evidence only if that danger "substantially outweigh[s]" the evidence's probative value.'"); *United States v. Orenuga*, 430 F.3d 1158, 1165 (D.C. Cir. 2005) (holding that the probative value of defendant's bigoted comments not substantially outweighed by unfair prejudice).

Based on these standards, Rule 403 offers no support for the Defendant's position. *First*, the proffered statements would not "significantly prejudice," let alone *unfairly* prejudice, the Defendant by linking him to the Proud Boys. This case, by the nature of the charges and allegations, already involves the Proud Boys. The proffered statements do not unnecessarily or randomly introduce the Proud Boys to the jury. Furthermore, the proffered statements do not suggest to the jury that the Proud Boys are "an extremist organization" with "divisive ideals," ECF No. 33 at 19, as the Defendant misleadingly suggests. The proffered statements only concern when Tarrio learned of the warrant for his arrest and the nature of his relationship with the Defendant.

*Second*, the Defendant's conclusory arguments do not even attempt to demonstrate how the proffered statements could confuse or mislead the jury, causing them to convict the Defendant based on an uncharged conspiracy. In fact, the Defendant's fears that the proffered statements would somehow lead the jury to believe a conspiracy existed only proves the government's point— a conspiracy existed, and the proffered statements were made in furtherance of it.  However, if the proffered evidence is admitted, neither the government, nor the Defendant, nor this Court would have to mention, let alone suggest, that a conspiracy existed in front of the jury. There is simply no need for anyone to argue or hint at the fact that any such conspiracy existed after this Court has ruled on admissibility, rendering the Defendant's argument inapplicable.

"Rule 403 tilts, as do the rules as a whole, toward the admission of evidence in close cases." *United States v. Douglas*, 482 F.3d 591, 600 (D.C. Cir. 2007) (quoting *United States v. Cassell,*

12

*292 F.3d 788*, 795 (D.C. Cir. 2002)). As the D.C. Circuit has further explained, "it is a sound rule that the balance should generally be struck in favor of admission when the evidence indicates a close relationship to the event charged." *Id.* (*quoting Cassell*, 292 F.3d at 795). The Court should strike the balance in favor of admitting the proffered statements. As previously briefed, the anticipated testimony provides direct evidence of the elements of the charged crime and is relevant to the Defendant's knowledge and intent at the time of the charged conduct. *See* ECF No. 29 at 18-19, 22-23. This Court, the D.C. Circuit, and others have determined that Rule 403 counsels in favor of admissibility under such circumstances. *See Orenuga*, 430 F.3d at 1165 (holding that the probative value of defendant's racially inflammatory comments regarding who would make the best targets for his bribery scheme was not substantially outweighed by unfair prejudice); *United States v. Clarke*, 767 F. Supp. 2d 12, 74 (D.D.C. 2011) (explaining that testimonial and video evidence regarding dismemberment of a body was not unfairly prejudicial where it showed consciousness of guilt and corroborated other witness testimony); *United States v. Evans*, 802 F.3d 942, 946 (8th Cir. 2015) ("Images and videos depicting child pornography are by their very nature disturbing, and viewing such depictions is highly likely to generate an emotional response. But that alone cannot be the reason to exclude the evidence."). The Defendant's arguments that the proffered statements are inadmissible pursuant to Rule 403 do not withstand scrutiny and should be rejected.

**IV.   CONCLUSION**

Tarrio's statements on the documentary video clip, "I knew as soon as I got to the airport," "he texted me in the air," and "from the air was when I knew they signed the warrant," satisfy Rule 807's two-part test. *See supra* at 2-5; *see also* ECF No. 29 at 14-19. Tarrio's statements to Bertino, including "that's my fed" or "that's my guy," "Shane" was the source of information, and that

"Shane" was the one who told him about the warrant, also satisfy Rule 807's two-part test. *See supra* at 5-7; *see also* ECF No. 29 at 19-24. The proffered statements are also admissible as co-conspirator statements made in furtherance of the conspiracy. *See supra* at 8-11; *see also* at ECF No. 29 at 24-26. None of these proffered statements are unfairly prejudicial. *See supra* at 11-13. As such, this Court can and should admit the statements prior to trial pursuant to Rule 807 and/or Rule 801(d)(2)E).

        Respectfully submitted,

        MATTHEW M. GRAVES
        UNITED STATES ATTORNEY
        D.C. Bar No. 481052

By:    */s/ Rebecca G. Ross*
        Rebecca G. Ross
        N.Y. Bar Number 5590666
        Joshua S. Rothstein
        N.Y. Bar Number 4453759
        Assistant United States Attorneys
        601 D Street, N.W.
        Washington, D.C. 2053
        202-252-7164 (JSR), 202-252-6937 (RR)
        Rebecca.Ross2@usdoj.gov
        Joshua.Rothstein@usdoj.gov

## CERTIFICATE OF SERVICE

Rebecca G. Ross, attorney for the United States, hereby certifies that a true and correct copy of the motion has been electronically served on attorney for the defendant.

*/s/ Rebecca G. Ross*
Rebecca G. Ross
